HIRAM TOMPKINS, Respondent, v. CORNELIUS SHEEHAN, Appellant.

*Evidence of a conversation had in the absence of one of the parties, inadmissible.*

Upon the trial of an action the question at issue was whether 1,785 shares of the stock of a corporation were sold to the defendant, or whether 1,985 shares thereof were so sold. It was shown that a conversation took place in the absence of the defendant, long prior to the sale, between the plaintiff and the other owners of the 1,985 shares of stock and the agent acting for all of them, who made the sale, in which it was agreed between them that none of the owners of such stock would sell their respective shares unless all sold.

*Held*, that evidence of such a conversation was inadmissible and that the reception thereof was an error which called for the reversal of a judgment rendered against the defendant in such action. HERRICK, J., dissenting.

APPEAL by the defendant, Cornelius Sheehan, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 8th day of November, 1893, upon the verdict of a jury for $2,668.50, rendered after a trial at the Saratoga Circuit, and also from an order entered in said clerk's office on the 19th day of February, 1894, denying the defendant's motion for a new trial made upon the minutes.

*J. W. Crane* and *Edwin Countryman*, for the appellant.

*Charles S. Lester*, for the respondent.

KELLOGG, J.:

The one question upon the trial was, were the 200 shares owned by plaintiff included in a sale to defendant of shares in the Congress Spring Company, consummated December 19, 1890? At that date 1,785 shares were delivered to defendant, and paid for by him. These 1,785 shares were owned, before sale to defendant, by other parties than plaintiff. The plaintiff claims that the sale in fact included his 200 shares, and made the number of shares actually sold 1,985. The plaintiff's shares were not delivered with the others, nor were they paid for.

The sale was negotiated on the part of the owners by Mr. Bockes, acting for himself as owner of a number of the shares delivered, and as agent for the other owners — each owning and holding his stock in severalty.

The agency of Bockes was created wholly by authority from each owner separately, obtained by direct communication with each a short time prior to the delivery of the 1,785 shares, and after the proposal to buy made to him by defendant through his agent, Mr. Crane. This is the testimony of Mr. Bockes and is undisputed. None of the owners of stock other than Bockes were present at or have any knowledge of the negotiation leading up to the sale or of the terms of the sale.

This simple question of fact was before the jury, was this sale a sale of 1,985 shares or a sale of 1,785 shares? Obviously, it should have been determined by what was said and done between

Bockes on one side and defendant Sheehan and his agent Crane on the other, and the knowledge of existing pertinent facts with which each was chargeable.

On the trial Bockes as witness gave, in substance, his version of what was said and done. He was flatly contradicted by witnesses Crane and Sheehan as to all or most of the material matters tending to establish plaintiff's claim, and in a degree, perhaps, contradicted by his own written memoranda and by plaintiff's telegram one day after the delivery of the 1,785 shares.

To corroborate the testimony of the witness Bockes, or to add to its weight and credit in the minds of the jury, the plaintiff offered to give in evidence a conversation between witness Bockes, the plaintiff, and the other owners of stock, had long anterior to the sale and long before any sale to defendant was contemplated, to the effect *that none of these owners would sell his stock unless all sold.*

A serious struggle, and a prolonged one, as the printed case shows, took place in the presence of the jury over the admission of this testimony. The conclusion is not unreasonable that the jury were led to believe that this evidence was of great weight, perhaps the turning point in the case.

A juryman's natural course of reasoning respecting this conversation would be : This witness says there was a conversation between the owners of the stock at some time. No one disputes it. Neither Crane nor Sheehan can dispute it; they were not present. The conversation amounted to an agreement that neither owner would sell unless all sold. That means if either broke this agreement he would become liable in an action for damages brought by the injured one. Is it likely that Bockes would take that risk, and subject himself to such an action by the plaintiff? Without instruction that such agreement had no binding force, was absolutely void for lack of consideration if for no other reason, our common experience teaches that the effect of such evidence upon the minds of a lay jury would be very great and in the line indicated.

But suppose the jury had been instructed that such an agreement could be only binding upon the conscience, then does not the conscience of this witness become the subject of inquiry to determine how much weight by probabilities this jury ought to attach to it? He would not have sold the 1,785 shares, because in conscience he

was bound not to sell unless he sold 1,985 shares. This is the plaintiff's argument, with the court's approval. Suppose now, defendant had offered to show that the witness in fact had no conscience, and the argument ought not for that reason to have any weight, would the trial court have permitted it? Certainly not.

But plaintiff's counsel says that the witness communicated this conversation to the defendant. What was said to defendant is competent, for that the defendant could either admit or deny; but this could furnish no ground for giving a conversation had when defendant was not present, though it were the same conversation, for that the defendant could not deny.

If the communication to defendant could furnish ground for admission of such testimony, even that ground is hardly furnished here. We are pointed to this question and answer to show such communication to defendant: "Q. What did you ever say to Judge Crane or Mr. Sheehan in regard to the arrangement that no one would sell the stock without the others? A. I told him that at the time the stock was delivered and he paid for it; that was the only time I ever spoke to Mr. Sheehan on the subject."

It clearly appears from this that nothing was ever said by witness to defendant on the subject *before the delivery and payment.*

It should be borne in mind that this conversation, so objected to and admitted, had no remote connection with the authority of Bockes to make a sale. It did not create the agency, and did not qualify or limit such agency. He testifies his agency was wholly created at another time. Nor did this conversation impress any binding conditions upon the stock, its ownership or disposition; and even if it had been communicated to defendant it must be presumed that both parties knew it presented no legal obstacle to a separate sale by either owner.

I think the admission of this conversation in evidence was error so material and prejudicial to defendant's case that a new trial should be granted, with costs to abide the event.

MAYHAM, P. J., concurred in result.

HERRICK, J. (dissenting):

This is an appeal from a judgment entered upon the verdict of a jury in favor of the plaintiff and against the defendant, and also

from an order denying a motion for a new trial upon the exceptions in the case.

The plaintiff in his complaint alleges that he, together with one William H. Bockes and three others, were owners in December, 1891, of 1,985 shares of the capital stock of the Congress Spring Company, of which amount the plaintiff owned 200 shares.

That on or about the 19th day of December, 1891, the said William H. Bockes, acting for himself and as agent for the plaintiff and the other owners of said stock, entered into an agreement with defendant, whereby he promised and agreed to sell to the defendant the said 1,985 shares of the capital stock in said company ; and that it was then specially understood and agreed with the parties owning such stock that they would not sell any portion thereof, unless the purchaser would agree to purchase and pay for the whole thereof at the price mentioned in said agreement. That, pursuant to said agreement, Bockes, for himself and as agent for the other owners, delivered to the defendant 1,785 shares of such capital stock, and agreed to deliver the other 200 shares as soon as the certificate could be found, which certificate, at the time of such agreement, was mislaid. He further alleges that the defendant received and accepted the said 1,785 shares of stock, and paid for the same, and that soon thereafter the plaintiff tendered to the defendant the other 200 shares of the capital stock, showing the certificate of title therefor, and that the defendant promised and agreed to accept such stock and pay for the same according to the agreement ; then follows the allegation that he neglected and refused to accept and pay for such stock as he had agreed to do, and a demand for judgment.

The defendant for answer admits the purchase of 1,785 shares of the stock, " being two hundred and ninety-seven from said Hanson, four hundred and ninety-six from said Richards, four hundred and ninety-six from said Gage, and four hundred and ninety-six from said Bockes ; and that he paid the said persons for said shares the amount stated in the complaint."

And, as a second defense in his answer, denies all the allegations in the complaint except as first admitted.

It will be observed that the complaint charges the sale of a block of stock owned by several parties in different amounts, and that

there was an agent acting for all the owners, with the understanding and agreement that the block of stock should be sold as a whole; and the theory of the plaintiff evidently is that the contract was for the sale of the 1,985 shares of stock as an entirety, and that by the acceptance of a portion of such stock and payment therefor the defendant bound himself to take the whole amount.

The defendant's theory evidently is that it was a separate contract with each owner for the number of shares of stock held by him.

The only questions argued by the appellant upon this appeal are those arising upon the admissibility of evidence offered by the plaintiff and received by the court over the defendant's objection.

The plaintiff was permitted to show conversations between the plaintiff and the agent Bockes and the other owners of the stock in the absence of the defendant, in which it was agreed between such owners that no one would sell his stock unless the others did; that they would all stand together and all keep the stock, or all sell it at the same time for the same price, and that this agreement was communicated to the defendant before the sale of the stock to him.

The evidence to prove such agreement was objected to as immaterial and incompetent; that the conversations were in the absence of the defendant, and it was argued that any such agreement was not binding in any way upon the defendant; that it was evidence made by the plaintiff in his own behalf, and, having been made in the absence of the defendant, that it could not be received as evidence corroborating the testimony of the agent Bockes as to what the agreement actually was between himself and the defendant.

I do not think that the exception to the admission of testimony to prove such agreement is well taken; in determining that question the allegation of the complaint must be kept in mind that the agreement was to sell the entire block of stock; that no part of it was to be sold unless all was sold, and that one of the owners was acting as agent for all of them; that the contract that he was making was one that would inure to the benefit of each one of the stockholders in proportion to the number of shares owned by him; that the conversation he was testifying to was one that related to the question of his agency.

The agreement testified to by him, and which he says was communicated to the defendant, was a limitation of his agency; under it he could not sell any portion of the stock unless he sold the whole thereof, and, therefore, it seems to me that the proof was strictly in accordance with the allegations made in the complaint, and is also admissible as a statement of his authority as agent made to the defendant prior to or during the negotiation of the sale of the stock; it does not present the same question that would be presented in the case of a separate and distinct contract for the sale of plaintiff's stock alone.

The question is raised upon this appeal that the plaintiff's agent did not communicate this agreement between the owners of the stock to the defendant or his agent until after the delivery of the other stock to and the payment therefor by the defendant.

According to the testimony of the plaintiff's agent, the plaintiff at the time the agreement to sell this block of stock was made was in Chicago; his agent telegraphed to him the proposed agreement to sell, to which the plaintiff replied that he would sell if the rest did. That thereafter plaintiff's agent went to the office of defendant's agent and there met the defendant, and made a delivery of all the certificates of stock that he had in his possession, and then and there told the defendant and his agent that he could not deliver them plaintiff's stock, because he could not find it. "And that as soon as he found it, it would be delivered to them for the purpose of having them pay for it with this; it was included in this sale; I said they must take that stock, although I could not deliver it; it was part of the original bargain, they were to buy the whole; I said they must take that stock when it could be delivered."

Further on he was asked this question: Q. "What did you ever say to Judge Crane or Mr. Sheehan in regard to the arrangement that no one would sell the stock without the others?" A. "I told him that at the time the stock was delivered and he paid for it; that was the only time I ever spoke to Mr. Sheehan on the subject."

After making this answer the defendant's counsel moved to strike out the testimony of the witness as to the interview between the plaintiff, Tompkins, Gage and Hanson, the other persons who had sold their stock to defendant, "on the ground that there is no

proof that what was said there was communicated to the defendant or his agent." The motion was overruled by the court.

It will thus be seen that the defendant did not raise the question that the communication was not made until after the other stock had been delivered and paid for, but simply raised the question that the conversation had not been communicated to the defendant or his agent at all, whereas, in truth the witness had just sworn to such communication, and, from his answers to the question propounded to him, taken in connection with his other testimony, the jury might have fairly inferred that he had communicated such conversation before the other stock was delivered and paid for, although at the same place and during the same interview.

For these reasons, I can see no error in the admission of the testimony in question, or the refusal of the court to strike it out.

The judgment, therefore, should be affirmed, with costs.

